1  RICHARD A. SALVATORE, ESQ.
   State Bar No. 6809
2  HARDY LAW GROUP
   96 & 98 Winter Street
3  Reno, NV 89503
   (775) 786-5800
4  Rich@Hardylawgroup.com

5  CAL J. POTTER, III, ESQ.
   State Bar No. 1988
6  POTTER LAW OFFICES
   1125 Shadow Lane
7  Las Vegas, Nevada 89102
   cpotter@potterlawoffices.com
8
   Attorneys for Plaintiffs
9
                    **UNITED STATES DISTRICT COURT**
10
                         **DISTRICT OF NEVADA**
11

12 DENISE ABBEY, individually, and
   as special administrator of the ESTATE
13 OF MICAH ABBEY,

14         Plaintiffs,                              Case No.
           vs.
15
   CITY OF RENO; RENO POLICE                       COMPLAINT FOR DAMAGES,
16 DEPARTMENT; KEITH PLEICH individually           DECLARATORY AND
   and in his official capacity as a Police Officer for   AND INJUNCTIVE RELIEF
17 CITY OF RENO AND RENO POLICE                    (42 U.S.C. § 1983; and pendant tort
   DEPARTMENT; DANIEL BOND individually            claims), AND DEMAND FOR
18 and in his official Capacity as a Police Officer JURY TRIAL
   for CITY OF RENO and RENO POLICE
19 DEPARTMENT; SCOTT RASMUSSEN
   Individually and in his official Capacity as a
20 Police Officer for CITY OF RENO and RENO
   POLICE DEPARMENT; BRAD DEMITROPOULIS;
21 and DOES I through X, inclusive,

22
23         Defendants.
                                              /
24

25         COMES NOW, DENISE ABBEY, Individually, and as Special Administrator of the

26 ESTATE OF MICAH ABBEY, by and through their attorneys, Richard A. Salvatore, Hardy Law

27 Group, and Cal J. Potter, III, of POTTER LAW OFFICES, file suit against the above-captioned

28 Defendants, and in support thereof, state as follows:

                                        1

## INTRODUCTION

1. This case arises out of the wrongful death of thirty-three year old MICAH ABBEY at the hands of several CITY OF RENO and RENO POLICE DEPARTMENT Officers as well as a University of Nevada, Reno Police Officer, during the night of December 25, 2011.

## JURISDICTION AND VENUE

2. This is a civil rights wrongful death/survival action arising from Defendants' use of excessive force and negligence, resulting in the death of Micah Abbey, deceased on December 25, 2011, in the City of Reno, Washoe County, Nevada. This Court has jurisdiction over this action against the Defendants pursuant to 42 U.S.C. §1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of Nevada. Jurisdiction is foundered upon 28 U.S.C. §1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions. This Court has jurisdiction over the pendant state law tort claims pursuant to 28 U.S.C. §1367.

3. Venue is properly vested in this Court because Plaintiffs and the Defendants are residents of the District of Nevada, and the acts complained of occurred within the jurisdiction of the District of Nevada (specifically, Washoe County).

## PARTIES

4. Plaintiff herein, Denise Abbey, is, and at all times mentioned herein, was a competent adult who appears both individually and as the special administrator of the ESTATE OF MICAH ABBEY (hereinafter "Plaintiffs"). Plaintiff is a citizen and resident of the State of Nevada, and she is the surviving parent of decedent, Micah Abbey, and is entitled to bring these claims individually pursuant to NRS § 41.100.

5. At all times relevant hereto, decedent, Micah Abbey, deceased (hereinafter referred to as "Micah Abbey") was a citizen of the State of Nevada and resided at 9801 Crystalline Drive, Reno, Nevada. At the time of his death, Micah Abbey had physical as well as mental/emotional problems, and weighed approximately one hundred and sixty-five (165) pounds.

///
///

6. Defendant CITY OF RENO (hereinafter "CITY") is a City in Nevada, organized as such under the laws of Nevada, and has designated offices located at 1 East First Street, Reno, Nevada, and at all relevant times hereto acted by and through its agents, servants and/or employees. Defendant CITY is responsible for the policies, procedures, practices and customs created, promulgated, implemented and enforced at the Reno Police Department, through its various agencies, agents, departments, representatives, officials, and/or employees.

7. Defendant RENO POLICE DEPARTMENT (hereinafter "RPD") is a police department in the State of Nevada, duly organized as such under the laws of the State of Nevada, and has offices located at 422 East Second Street, Reno, Nevada. At all relevant times hereto, Defendant RPD acted by and through its officers, agents, servants and/or employees. Defendant RPD is responsible for the policies, procedures, practices and customs created, promulgated, implemented and enforced at the Reno Police Department, through its various agencies, agents, departments, representatives, officials, and/or employees.

8. Defendant KEITH PLEICH (hereinafter "PLEICH"), was at all relevant time, an officer with Defendant RPD and Defendant CITY OF RENO and resided in Washoe County, Reno, Nevada. Defendant PLEICH is sued in his individual and official capacity.

9. Defendant DANIEL BOND, (hereinafter "BOND") was at all relevant time, an officer with Defendant RPD and Defendant CITY, and resided in Washoe County, Reno, Nevada. Defendant BOND is sued in his individual and official capacity.

10. Defendant SCOTT RASMUSSEN, (hereinafter "RASMUSSEN") was at all relevant time, an officer with Defendant RPD and Defendant CITY, and resided in Washoe County, Reno, Nevada. Defendant RASMUSSEN is sued in his individual and official capacity.

11. Defendant BRAD DEMITROPOULIS (hereinafter "DEMITROPOULIS"), was at all relevant time, an officer with the University of Nevada, Reno and resided in Washoe County, Reno, Nevada. Defendant DEMITROPOULIS is sued in his individual capacity.

///
///
///

12. Defendants DOES I through X (hereinafter "DOES") are individuals or entities who were, at all relevant times hereto, working in the course and scope of their employment, and under the color and guise of the laws of the State of Nevada. Defendants DOES I through X are fictitious names; that Plaintiff is ignorant as to the true names of the individuals, entities, corporations, co-partnerships, and associations so designated by said fictitious names, and when the true names are discovered, Plaintiff will seek leave to amend this Complaint and proceeding herein to substitute the true names and capacities when ascertained. Plaintiffs believe and allege that each of the fictitiously named Defendants is legally responsible and liable for the incident, injuries/death and damages set forth herein. Each DOES defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control. Each DOES defendant was responsible for the creation, training, promulgation, implementation and/or enforcement of polices, procedures, practices and customs including, but not limited to, such policies, procedures, practices and customs that relate to electronic control weapons (including tasers), use of pepper/chemical spray, physical restraint procedures of suspects, conflict resolution, de-escalation, force continuum, and first aid. These individuals may have been physically present at decedent's residence on December 25, 2011, and/or may have participated remotely. All of these fictitiously named Defendants are responsible for the violations of civil rights, the negligent and/or intentional conduct, which lead to and caused the death of Micah Abbey, deceased, as fully set forth herein.

13. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged. At all material times, each Defendant was jointly engaged in tortuous activity, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

///

4

14. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of Nevada.

15. This Complaint may be pled in the alternative pursuant to Fed.R.Civ.P.8(d)(2).

## FACTUAL BACKGROUND

16. Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

17. At all times mentioned herein, Micah Abbey lived at 9801 Crystalline Drive, Reno, Nevada. Project Uplift owned the home and contracted with Northern Nevada Adult Mental Health Services to house residents to transition them to living on their own.

18. At all times relevant hereto, decedent, Micah Abbey suffered from mental and emotional illnesses and disabilities, including bipolar disorder, anxiety disorder and post traumatic stress disorder (PTSD). Micah Abbey also suffered from chronic pain from a 2010 back surgery. At the time of the occurrences set forth herein, some or all of the Defendants knew or should have known of Micah Abbey's mental, physical and emotional conditions.

19. On December 25, 2011, between 7:00 p.m. and 7:45 p.m., Micah Abbey, was involved in an argument with another resident living at 9801 Crystalline Drive, Reno, Nevada. Micah Abbey was upset that someone had taken his backpack and/or waist-pack.

20. As a result of the argument between Micah Abbey and another resident, Project Uplift caretaker Michael Ross talked to Micah Abbey to resolve the issue, which resulted in Micah Abbey getting into a confrontation with Michael Ross. On information and belief, Micah Abbey was yelling and bumped bodies with Michael Ross.

21. On information and belief, at approximately 7:45 p.m., Michael Ross called 911, and as a result of subsequent dispatches, Defendants sent officers to Micah Abbey's residence.

22. On information and belief, at approximately 7:56 p.m., Defendant PLEICH, of the RPD, arrived at Micah Abbey's residence. Upon Defendant PLEICH's arrival, Micah Abbey was calm, peaceful, quiet and alone in his bedroom.

///

///

5

23. On information and belief, upon Defendant PLEICH's arrival, he met and spoke with Michael Ross. Michael Ross informed Defendant PLEICH that the home housed people with mental, physical and/or emotional problems. Michael Ross further informed Defendant PLEICH of Micah Abbey's emotional, physical and mental conditions and the incident that occurred.

24. On information and belief, Defendant PLEICH went to Micah Abbey's bedroom, and confronted Micah Abbey. At the time, Micah Abbey had no weapons on his person, was calm and sitting on his bed. Defendant PLEICH told Micah Abbey that he wanted to take him to the hospital for a "Legal 2000" hold and evaluation. Through the conversation, Defendant PLEICH recognized that Micah Abbey was suffering from mental, physical and emotional problems.

25. On information and belief, most of this discussion between Defendant PLEICH and Micah Abbey took place in Micah Abbey's bedroom.

26. Micah Abbey's bedroom was a small room, with a small standing area, two beds, and a dresser between the two beds.

27. On information and belief, at approximately 8:06 p.m., Defendant BOND arrived at Micah Abbey's residence. Upon arrival, Defendant BOND was aware that the location housed persons with mental, emotional or physical problems, and went and spoke with Defendant PLEICH and Micah Abbey. Again, this encounter occurred in Micah Abbey's small bedroom.

28. Upon information and belief, none of the Defendants requested, called, or otherwise considered the Mobile Outreach Safety Team (MOST Team) which is specifically designed to deal with people who have mental health issues, the Crisis Intervention Team or any similar unit or back up personnel which possessed adequate training for interventions with a person suffering from a mental or emotional disability, or potentially suffering from a mental, physical or emotional disability.

29. Both Defendant BOND and Defendant PLEICH knew or should have known that Micah Abbey was afflicted with mental, physical and/or emotional disabilities.

30. Defendant BOND and Defendant PLEICH told Micah Abbey they were going to take him in for a "Legal 2000" hold and/or he would be arrested for battery, and Micah Abbey refused to go.

31. Upon information and belief, Defendant PLEICH and Defendant BOND confronted Micah Abbey in his small bedroom, failed to initiate any de-escalation protocols and procedures, which caused Micah Abbey to attempt to escape through a window in his bedroom.

32. Upon information and belief, while Defendant BOND and Defendant PLEICH were deciding what to do, Micah Abbey attempted to escape through his bedroom window, and the Defendants, through numerous types of force, attempted to control Micah Abbey and place him in custody.

33. All of the Defendants were under an obligation and duty to abide by applicable force continuums, including the use of electronic control weapons (hereinafter "ECW", including tasers), and physical restraint, so as to avoid serious and fatal injuries to all individuals seized or in the process of being seized, including Micah Abbey.

34. Upon information and belief, Defendants discharged taser ECW's twenty-six times (26), striking Micah Abbey, thereby subjecting him to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

35. Upon information and belief, Defendants utilized taser ECW's multiple times in "Drive Stun Mode" on Micah Abbey, thereby subjecting Micah Abbey to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

36. Upon information and belief, Defendants utilized significant and unreasonably dangerous physical restraint techniques upon Micah Abbey, including the use of a carotid artery choke hold, thereby enhancing Micah Abbey's respiratory and circulatory strain and distress.

37. Upon information and belief, Defendants utilized significant and unreasonably dangerous physical restraint techniques upon Micah Abbey, including the use of batons/sticks, thereby enhancing Micah Abbey's respiratory and circulatory strain and distress.

38. Upon information and belief, Defendants utilized significant and unreasonably dangerous physical restraint techniques upon Micah Abbey, including the use of handcuffs and RIPP restraints to bind Micah Abbey, while both Defendant BOND and Defendant PLEICH placed their full body weights on his upper and middle body, thereby enhancing Micah Abbey's respiratory and circulatory strain and distress.

39. Upon information and belief, after wrestling with Micah Abbey for approximately 10 minutes, Defendant PLEICH and Defendant BOND controlled Micah Abbey. They (PLEICH and BOND) had Micah Abbey face down, with both wrists cuffed from behind. At that time, Defendant PLEICH had his knee on Micah Abbey's back and both hands on his back forcefully pushing down. At that same time, Defendant BOND was sitting on Micah Abbey's low back and/or legs. With control over Micah Abbey, and in a time of two-minutes and one second, Defendant BOND used his ECD in "drive stun mode", twelve (12) times, while Micah Abbey was under Defendants control, and posed no threat of harm, danger or escape.

40. At approximately 8:21 p.m., Defendant DEMITROPOULIS, a University of Nevada, Reno police officer arrived. Defendant PLEICH and/or Defendant BOND directed Defendant DEMITROPOULIS to cross Micah Abbey's legs and hold them. At that time, Defendant PLEICH and Defendant BOND controlled Micah Abbey. Micah Abbey was face down, with both wrists cuffed from behind, and Defendant PLEICH had his knee on Micah Abbey's back and both hands on his back forcefully pushing down. At that same time, Defendant BOND was sitting on Micah Abbey's low back and/or legs. Defendant DEMITROPOULIS crossed Micah Abbey's legs and held them in place, thereby enhancing Micah Abbey's respiratory and circulatory strain and distress. Defendant DEMITROPOULIS held Micah Abbey in this position did for a period of time until the arrival of Defendant RASMUSSEN.

41. At approximately 8:24, Defendant RASMUSSEN arrived with RIPP restraints (which is a tie between handcuffs and ankles). At the time, Defendant PLEICH and Defendant BOND controlled Micah Abbey face down, with both wrists cuffed from behind, and Defendant PLEICH had his knee on Micah Abbey's back and both hands on his back forcefully pushing down. Defendant BOND was sitting on Micah Abbey's low back and/or legs. Defendant DEMITROPOULIS was holding Micah Abbey's legs and held them in place. Defendant RASMUSSEN proceeded to tie the RIPP restraints to Micah Abbey's ankles and wrist cuffs, thereby enhancing Micah Abbey's respiratory and circulatory strain and distress. After having the RIPP restraints in place, Defendant PLEICH realized Micah Abbey was not breathing.

///

42. Thereafter, Defendants took the RIPP restraints off and unhooked one of the handcuffs, and started cardio pulmonary resuscitation until medical units arrived and took over. The Reno Fire Department and Remsa were not successful.

43. At 9:00 p.m., Dr. Morcan pronounced Micah Abbey deceased by phone.

44. Ellen G.I. Clark, M.D. and Piotr A. Kubiczek, M.D., from the Washoe County Medical Examiner's Office ruled Micah Abbey's death a "homicide" with other significant conditions as "police restraint procedures".

45. The conduct of Defendants violated Micah Abbey's constitutional rights as guaranteed by the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

46. At all times relevant hereto, the Defendants acted under the color and guise of state and local laws.

47. The conduct of the Defendants as set forth above and herein, acting under the color and guise of state and local law, was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, and life of Micah Abbey, and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to Micah Abbey, and was so egregious as to shock the conscience.

48. Upon information and belief, Micah Abbey was in the custody of the Defendants, or was in the process of being placed into custody, thereby creating a special relationship between the Defendants and Micah Abbey. As such, Defendants were entrusted with and responsible for Micah Abbey's protection, safety, well-being and life while he was within (or was in the process of being placed in) their custody.

49. Defendants' conduct, as described above and herein, was undertaken in bad faith and with malice, bad motive, evil intent and deliberate and/or reckless indifference to and callous disregard for Micah Abbey's constitutional rights to be free from physical assault causing grievous injuries, harm and death under the Fourteenth Amendment to the United States Constitution, as a result of being in (or in the process of being placed in) the custody of Defendants.

///
///

50. As a direct and proximate result of Defendants' conduct, as described above and herein, Micah Abbey was caused to suffer grievous physical injuries, significant conscious pain and suffering, and an agonizing death.

51. As a direct and proximate result of each Defendants' acts and/or omissions, Plaintiffs sustained the following injuries and damages, past and future, among others: wrongful death of Micah Abbey; funeral and burial expenses; loss of familial relationship, including loss of love, companionship, comfort, affection, consortium, solace, society and moral support; violation of constitutional rights; all damages and penalties recoverable under 42 U.S.C. §1983 and 1988, and otherwise allowed under Nevada and United States statutes, codes, and common law; Micah Abbey's loss of life, pursuant to federal civil rights law; and Micah Abbey's conscious pain and suffering, pursuant to federal civil rights law.

## COUNT I

### 42 U.S.C. § 1983

### (Plaintiffs v PLEICH, BOND, RASMUSSEN, DEMITROPOULIS, AND DOES I-X)

52. Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

53. Upon information and belief, on December 25, 2011, the Defendants, despite being aware that Micah Abbey was already short of breath and suffered from physical, mental and emotional disabilities, utilized unreasonable, malicious, and/or excessive and unreasonably dangerous force on Micah Abbey; specifically, the discharge of multiple ECWs on Micah Abbey in "Drive Stun Mode" on Micah Abbey, and the utilization of significant and unreasonably dangerous restraint techniques upon Micah Abbey, when Defendants had full control of Micah Abbey, as Micah Abbey was in handcuffs behind his back, had the full force of the two Defendants on top of him, and despite this control, Defendants continued to discharge twelve (12) times the ECW in "Drive Stun Mode". Excessive restraint procedures were done. Micah Abbey was already restrained. He did not need to be restrained further, this is excessive Thereafter, Defendants' further restricted Micah Abbey's movement by holding his legs. Finally, Defendants used "RIPP" restraints to bind Micah Abbey, all of which caused Micah Abbey's circulatory and respiratory distress, including, but not

limited to, death.

54. By the actions and omissions described above and herein, Defendants' violated 42 U.S.C. § 1983, depriving Plaintiffs of clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendment to the United States Constitution:

    a. The right to be free from unreasonable seizure as secured by the Fourth and Fourteenth Amendment;

    b. The right to be free from excessive and unreasonable force as secured by the Fourth and Fourteenth Amendment;

    c. The right to be free from unlawful deadly force as secured by the Fourth and Fourteenth Amendment;

    d. The right to be free from the use of unlawful, reckless, deliberately indifferent, and conscience shocking deadly force as secured by the Fourteenth Amendment.

    e. The right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship, society, support of each other, as secured by the First, Fourth and Fourteenth Amendments, and N.R.S. § 41.100.

55. Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of the rights described herein, knowingly, maliciously, and with conscious disregard for whether the rights and safety of Plaintiffs, individually, and on behalf of Micah Abbey, deceased, and other would be violated by their acts and/or omissions.

56. As a direct and proximate result of Defendants acts and/or omissions as set forth above and herein, Plaintiff sustained injuries and damages as set forth above and herein.

57. The conduct of Defendants PLEICH, BOND, RASMUSSEN, DEMITROPOULIS, AND DOES I-X entitles Plaintiffs to damages, punitive damages and penalties allowable under 42 U.S.C. § 1983 and N.R.S. § 42.005.

58. Plaintiffs are also entitled to costs and attorneys fees under 42 U.S.C. § 1988 and applicable Nevada statutes.

## COUNT II

### 42 U.S.C. § 1983 – MONELL CLAIM

### (Plaintiffs v CITY, RPD and DOES I-X)

59. Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

60. The unconstitutional actions and/or omissions of Defendants PLEICH, BOND, RASMUSSEN, DEMITROPOULIS, AND DOES I-X, as well as other officers employed by or acting on behalf of Defendant CITY and Defendant RPD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of CITY and RPD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy-making officers of CITY and RPD:

   a. To use or tolerate the use of excessive and/or unjustified force;

   b. To use or tolerate the use of unlawful deadly force;

   c. To fail to use appropriate and generally accepted law enforcement procedures in handling an emotionally disturbed person;

   d. To fail to use appropriate and generally accepted law enforcement procedures in handling citizens;

   e. To cover-up violations of constitutional rights by any or all of the following:

      i. By failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, and/or unlawful seizures,

      ii. By ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity;

      iii. By allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful

police conduct, by withholding and/or concealing material information;

 f. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and,

 g. To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct.

 h. Policy of failing to discipline poorly performing officers.

61. Defendants CITY, RPD and DOES I-X had a significant prior opportunity to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols to help protect Micah Abbey from serious and foreseeable harm, including the serious risk of harm and death associated with exposure to a combination of multiple ECW electrical deployments, ECW drive stunning, the use of batons, carotid choke holds, and the use of significant physical restraint methods (including the use of handcuffs and RIPP restraints to tie up an individual), particularly when the individual who is the recipient of these methods has the full force and weight of the Defendants on top of him, and is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotional health problems, as Micah Abbey clearly was.

62. Defendants CITY, RPD and DOES I-X intentionally, recklessly, and/or negligently failed to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols regarding the use of force, including but not limited to force continuums, use of ECWs, use of "Drive Stun Mode" with ECWs, and use of significant physical restraint methods (including the use of handcuffs, RIPP restraints and body weight restraint) and the combination thereof, including when the recipient of these forcible methods is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotional health problems, as Micah Abbey clearly was.

///

///

63. Defendants CITY, RPD and DOES I-X failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate and discipline Defendants PLEICH, BOND, RASMUSSEN, DEMITROPOULIS, AND DOES I-X, and other RPD and CITY personnel, with deliberate indifference to Plaintiffs' constitutional rights, which were thereby violated as described above.

64. The unconstitutional actions and/or omissions of Defendants PLEICH, BOND, RASMUSSEN, DEMITROPOULIS, AND DOES I-X, and other RPD and CITY personnel, as described above, were approved, tolerated, and/or ratified by policy-making officials of RPD and CITY. Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the authorized makers within CITY, RPD and DOES I-X, and that such policy makers have direct knowledge of the fact that Micah Abbey's death was not justified and the force used was excessive. Notwithstanding this knowledge, the authorized policy makers within RPD, CITY and DOES I-X have approved Defendants PLEICH, BOND, RASMUSSEN, DEMITROPOULIS, AND DOES I-X actions. By so doing, the authorized policy makers within CITY, RPD and DOES I-X have shown affirmative agreement with the individual Defendant officers' actions, and have ratified the unconstitutional acts of the individual Defendants.

65. The aforementioned customs, policies, practices, and procedures, the failures to adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration or wrongful conduct by Defendants CITY and RPD, and Does 1-10, were a moving force and/or proximate cause of the deprivations of Plaintiff's clearly-established and well-settled constitutional rights in violation of 42 USC § 1983, as set forth above.

66. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions.

///

///

///

67. The violations of Micah Abbey's substantive constitutional rights, and his resulting catastrophic injuries and death, were directly caused by Defendants' failure to properly supervise, educate, instruct, train and/or control their personnel in general, as well as in the following specific respects:

   a. Failing to adequately supervise, instruct, train, and educate their officers in regard to force continuums, and ensure that force continuums were properly implemented, enforced and followed, so as to expose members of the public, including Micah Abbey, to the least possible level of force, including no force whatsoever;

   b. Failing to adequately supervise, instruct, train, and educate the officers in regard to interactions with individuals suffering from mental and emotional health issues, including Micah Abbey, so that proper communication can occur, and potentially violent confrontations can be avoided, including, but not limited to, recognizing the need to utilize or call for the MOST team or for a Crisis Intervention Team and requesting assistance there from;

   c. Failing to adequately supervise, instruct, train, and educate their officers in the proper use of ECW deployment;

   d. Failing to adequately supervise, instruct, train, and educate their officers in the proper use of ECW deployment in "Drive Stun Mode";

   e. Failing to adequately supervise, instruct, train, and educate their officers regarding the increased risk of serious injury of death that accompanies a prolonged electrical shock administered by the ECW, including but not limited to aggregate duration when multiple ECWs are deployed;

   f. Failing to adequately supervise, instruct, train, and educate their officers in the proper use of body pressure or position to avoid asphyxiation, especially when coupled with the serial use of ECW's being deployed;

   g. Failing to adequately supervise, instruct, train, and educate their officers in the proper use of significant physical restraint methods (including but not limited

15

to the use of handcuffs, body position and weight distribution, and RIPP restraints/rope) including when an ECW has additionally been deployed;

 h. Failing to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing respiratory distress, positional asphyxiation and the resulting health ramifications associated with using ECWs, and significant physical restraint methods (including tying up with rope) on such persons;

 i. Failing to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing circulatory distress and the resulting health ramifications associated with using ECWs, and significant physical restraint methods on such persons;

 j. Failing to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing mental and/or emotional health disabilities, and the resulting health ramifications associated with using ECW's, and significant physical restraint methods on such persons;

68. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures Defendants CITY, RPD and DOES I-X, Micah Abbey sustained catastrophic injuries which legally and proximately caused his death and Plaintiffs are entitled to damages, penalties, costs and attorney fees as set forth herein, and punitive damages against Defendants.

## COUNT VI

### NEGLIGENCE

**(Plaintiffs v All Defendants)**

69. Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

70. At all times, each Defendant owed Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

71. At all times, each Defendant owed Plaintiff the duty to act with reasonable care.

16

72. Their general duties of reasonable care and due care owed to Plaintiff by all Defendants, which include but are not limited to the following specific obligations:

    a. to refrain from using excessive and/or unreasonable force against Micah Abbey;

    b. to refrain from unreasonably creating the situation where force, including deadly force, is used;

    c. to refrain from abusing the authority granted to them by law;

    d. to refrain from violating Plaintiff's rights guaranteed by the United States and Nevada Constitutions, as set forth above, and as otherwise protected by law.

73. Additionally, these general duties of reasonable care and due care owed to Plaintiff by Defendants CITY, RPD and DOES I-X, include but are not limited to the following specific obligations:

    a. to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline, their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

    b. to make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiffs';

    c. to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth above.

74. Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs.

75. As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each and every Defendant and are entitled to relief as set forth herein, and punitive damages against all Defendants.

///

///

## COUNT VI

### ASSAULT AND BATTERY
(Plaintiffs v All Defendants)

76. Plaintiffs re-allege each and every paragraph in this Complaint as if fully set forth here.

77. The actions of Defendants as set forth above, constitute assault and battery.

78. As a direct and proximate result of Defendants' assault and battery of Micah Abbey, Plaintiffs sustained injuries and damages, and are entitled to relief as set forth herein and punitive damages against Defendants.

## COUNT VI

### WRONGFUL DEATH
(Plaintiffs v All Defendants)

79. Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

80. Plaintiffs are the legal representatives of the Estate of Micah Abbey.

81. Plaintiffs bring this action pursuant to *NRS 41.085* on behalf of themselves, and all other persons entitled to recover under the law.

82. By reason of the death of Micah Abbey, Plaintiff Denise Abbey, as Special Administrator of the Estate of Micah Abbey, has suffered pecuniary losses as well as funeral expenses and expenses of administration necessitated by reason of the injuries which caused the death of Micah Abbey, and is entitled to punitive damages.

83. That as a direct and proximate result of the Defendants' actions and inactions, as set forth above, Plaintiff DENISE ABBEY individually has sustained damages for her grief, sorrow, companionship, society and comfort, and damages for pain, suffering and disfigurement of the decedent, Micah Abbey.

///

///

///

///

1  WHEREFORE, Plaintiffs respectfully request the following relief against each and every
2  Defendant herein, jointly and severally:
3      a.    compensatory and exemplary damages in an amount according to proof and which is
4  fair, just and reasonable, in excess of seventy five thousand dollars.($75,000.00);
5      b.    punitive damages under 42 USC § 1983 and Nevada law in an amount according to
6  proof and which is fair, just, and reasonable, in excess of seventy five thousand dollars.($75,000.00);
7      c.    all other damages, penalties, costs, interest, and attorney fees as allowed by 42 USC §
8  1983 and §1988 and as otherwise may be allowed by Nevada and/or federal law, in excess of seventy
9  five thousand dollars.($75,000.00);
10      d.    Injunctive relief, including but not limited to the following:
11          i.    an order requiring Defendants to institute and enforce appropriate and lawful
12             policies and procedures for interacting with and confronting individuals,
13             particularly persons with disabilities and emotionally disturbed persons;
14          ii.    an order prohibiting Defendants and their police officers from unlawfully
15             interfering with the rights of Plaintiffs and others to be free from unreasonable
16             seizures and excessive and unreasonable force;
17          iii.    an order prohibiting Defendants and their police officers from engaging in the
18             "code of silence" as may be supported by the evidence in this case;
19          iv.    an order requiring Defendants to train all CITY and RPD law enforcement
20             officers concerning generally accepted and proper tactics and procedures for
21             the use of force and deadly force and this Court's orders concerning the issues
22             raised in injunctive relief requests i-iii, above;
23          v.    an order requiring Defendants to train all CITY and RPD officers concerning
24             generally accepted and proper tactics and procedures for handling emotionally
25             disturbed persons, disabled persons, and this Court's orders concerning
26             requests i-iii, above;
27          vi.    an order requiring Defendants to train all CITY and RPD officers concerning
28             generally accepted and proper tactics and procedures for handling disabled

1 | persons and this Courts orders concerning the issues raised in injunctive relief
2 | requests i-iii, above;
3 | vii. An order requiring Defendants to collect and publicly release data concerning
4 | police interaction with emotional disturbed and/or disabled individuals, so that
5 | CITY, RPD will foster a yet-to-be-seen degree of transparency and
6 | accountability.

DATED: June 25, 2013

Respectfully submitted,

_____     _____
RICHARD A. SALVATORE, ESQ.           CAL J. POTTER, III
*Attorney for Plaintiffs*             *Attorney for Plaintiffs*

### AFFIRMATION

Pursuant to NRS 239B.030, the undersigned does hereby affirm that the proceeding document and attached exhibits, if any, do not contain the Social Security Number of any person.

DATED this 28th day of June 2013.

_____
Erin Di Pietro, Legal Assistant to
Richard Salvatore, Esq.